UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAWN M. BACHI-REFFITT,                    Case No. 1:17-cv-263

                Plaintiff,              Hon. Gordon J. Quist

v.

KEVIN REFFITT, RONALD REFFITT, SR.,
KAREN WIERENGA, and PENCON, INC.,

                Defendants.
_____/

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    I.      Procedural History ................................................................................. 2

    a.     The Divorce Proceeding ....................................................................... 2

    b.     The Consent Judgment ......................................................................... 4

    c.     Post-Judgment Proceedings and Actions filed by Plaintiff in State Court ............. 5

    II.     Allegations and Claims Alleged by Plaintiff in this Action ................................... 6

STANDARD FOR DISMISSAL ............................................................................................ 10

ARGUMENT ..................................................................................................................... 11

    I.      All of Plaintiff's Claims are Barred by the Consent Judgment in the
        Divorce Proceeding ............................................................................. 11

        A.    Plaintiff's Complaint is precluded by the Consent Judgment ................... 11

            1.    Michigan law does not allow Plaintiff to litigate alleged
                discovery fraud in the Divorce Proceeding by bringing a
                new action. ..................................................................... 11

            2.    Plaintiff's claims are barred by res judicata ................................. 13

            3.    Plaintiff expressly released, settled, and discharged all of
                 the claims she has asserted in this action under the plain
                and unambiguous terms of the Consent Judgment. ....................... 15

            4.    Plaintiff Lacks Standing ........................................................... 16

    II.     Plaintiff Fails to State a RICO Claim as a Matter of Law ................................... 17

        A.    Plaintiff fails to state a claim for a violation of 18 U.S.C. § 1962(c) ........ 18

            1.    Plaintiff fails to allege a "pattern" of racketeering activity. .......... 18

            2.    Plaintiff fails to allege a RICO enterprise. ................................... 21

Page

        3.     Plaintiff has not sufficiently pleaded the alleged predicate crimes. ........................................................................................22

    B.    Plaintiff fails to state a conspiracy claim under 18 U.S.C. 1962(d)...........24

III.    The Court should decline to exercise Supplemental Jurisdiction over the remaining claims. ....................................................................................24

CONCLUSION ............................................................................................ 25

## TABLE OF AUTHORITIES

Page(s)

### Federal Cases

*Am. Eagle Credit Corp. v. Gaskins*,
  920 F.2d 352 (6th Cir. 1990) ................................................................... 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................... 10, 11, 23

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
  528 F.3d 426 (6th Cir. 2008) ...................................................................... 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................... 10, 23

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639, 128 S. Ct. 2131 L. Ed. 2d 1012 (2008)............................. 22

*Brown v. Neeb*,
  644 F.2d 551 (6th Cir.1981) ....................................................................... 15

*Capasso v. CIGNA Ins. Co.*,
  765 F. Supp. 839 (S.D.N.Y. 1991) ............................................................. 17

*Cohen v. Cohen*,
  993 F. Supp. 2d 414 (S.D.N.Y. 2014) ........................................................ 18

*Craighead v. E.F. Hutton & Co.*,
  899 F.2d 485 (6th Cir. 1990) ...................................................................... 24

*DLX, Inc. v. Kentucky*,
  381 F.3d 511 (6th Cir. 2004) ...................................................................... 10

*Evans v. Dale*,
  896 F.2d 975 (5th Cir. 1990) ...................................................................... 14

*Fabian v. Fulmer Helmets, Inc.*,
  628 F.3d 278 (6th Cir. 2010) ...................................................................... 10

*Frank v. D'Ambrosi*,
  4 F.3d 1378 (6th Cir. 1993) ........................................................................ 21

*Frank v. Dana Corp.*,
  547 F.3d 564 (6th Cir.2008) ....................................................................... 22

*Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*,
No. 14-11358, 2016 WL 2622352 (E.D. Mich. May 9, 2016) ................................................ 12

*Giesse v. Sec'y of HHS*,
522 F.3d 697 (6th Cir. 2008) ................................................ 10

*Griffin v. NBD Bank*,
43 F. Supp. 2d 780 (W.D. Mich. 1999) ................................................ 20

*H.J., Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 S. Ct. 2893, 2900 (1989) ................................................ 19, 20

*Heinrich v. Waiting Angels Adoption Services, Inc.*,
668 F.3d 393 (6th Cir. 2012) ................................................ 18, 22, 23

*Holmes v. Sec. Inv'r Prot. Corp.*,
503 U.S. 258, (1992) ................................................ 17

*In re ClassicStar Mare Lease Litigation*,
727 F.3d 473 (6th Cir. 2013) ................................................ 21

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
731 F.3d 556 (6th Cir. 2013) ................................................ 16

*Kerrigan v. ViSalus, Inc.*,
112 F. Supp. 3d 580 (E.D. Mich. 2015) ................................................ 19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ................................................ 16

*Migra v. Warren City School Dist.*,
465 U.S. 75 (1984) ................................................ 11

*Moon v. Harrison Piping Supply*,
465 F.3d 719 (6th Cir. 2006) ................................................ 18, 19, 21

*New England Health Care Employees Pension Fund v. Ernst & Young, LLP*,
336 F.3d 495 (6th Cir. 2003) ................................................ 2

*Nolan v. Galaxy Sci. Corp.*,
269 F. Supp. 2d 635 (E.D. Pa. 2003) ................................................ 24

*Pohlot v. Pohlot*,
664 F. Supp. 112 (S.D.N.Y. 1987) ................................................ 17

*Sawyer v. Arum*,
690 F.2d 590 (6th Cir. 1982). ................................................ 15

*Taylor v. First of Am. Bank*,
  973 F.2d 1284 (6th Cir. 1992) ................................................................ 25

*United States v. Chance*,
  306 F.3d 356 (6th Cir. 2002 ................................................................... 21

*United States v. Pendergraft*,
  297 F.3d 1198 (11th Cir. 2002) ............................................................. 23

*United States v. Sinito*,
  723 F.2d 1250 (6th Cir. 1983) ............................................................... 24

*VanDenBroeck v. CommonPoint Mortg. Co.*,
  210 F.3d 696 (6th Cir. 2000) ................................................................. 22

*Vemco, Inc. v. Camardella*,
  23 F.3d 129 (6th Cir. 1994), *cert. denied*, 513 U.S. 1017 (1994) .................. 20, 21

*Vild v. Visconsi*,
  956 F.2d 560 (6th Cir. 1992) ................................................................. 20

*Ward v. Alternative Health Delivery Sys., Inc.*,
  261 F.3d 624 (6th Cir. 2001) ................................................................. 10

*Young v. Twp. of Green Oak*,
  471 F.3d 674 (6th Cir. 2006) ................................................................. 11

**State Cases**

*Adair v. State*,
  680 N.W.2d 386 (Mich. 2004) ............................................................... 13

*Byington v. Byington*,
  568 N.W.2d 141 (Mich. App. 1997) ....................................................... 17

*Cole v. Ladbroke Racing Mich., Inc.*,
  614 N.W.2d 169 (Mich. App. 2000) ....................................................... 15

*Colestock v. Colestock*,
  354 N.W.2d 354 (Mich. App. 1984) ....................................................... 14

*Daoud v. De Leau*,
  565 N.W.2d 639 (Mich. 1997) ........................................................... 11, 12

*Dart v. Dart*,
  597 N.W.2d 82 (Mich. 1999) ................................................................. 13

*Ditmore v. Michalik*,
    625 N.W.2d 462 (Mich. App. 2001)........................................................................ 13

*Donahue v. Donahue*,
    352 N.W.2d 705 (Mich. App. 1984)........................................................................ 14

*Dresden v. Detroit Macomb Hosp. Corp.*,
    553 N.W.2d 387 (Mich. App. 1996)........................................................................ 16

*In re Koernke Estate*,
    425 N.W.2d 795 (Mich. App. 1988)........................................................................ 13

*Nederlander v. Nederlander*,
    517 N.W.2d 768 (Mich. App. 1994).................................................................. 12, 17

*Quade v. Quade*,
    604 N.W.2d 778 (Mich. App. 1999)........................................................................ 17

*Rinke v. Auto. Moulding Co.*,
    573 N.W.2d 344 (Mich. App. 1997)........................................................................ 15

*Stefanac v. Cranbrook Educ. Comm.*,
    458 N.W.2d 56 (Mich. 1990)................................................................................... 15

*TBCI, PC v. State Farm Mut Auto Ins. Co.*,
    795 N.W.2d 229 (Mich. Ct. App. 2010) ................................................................. 14

*Triplett v. St. Amour*,
    507 N.W.2d 194 (Mich. 1993)................................................................................. 11

*Washington v. Sinai Hosp. of Greater Detroit*,
    733 N.W.2d 755 (Mich. 2007)................................................................................. 13

## Federal Statutes

18 U.S.C. § 1961....................................................................................... 6, 18, 21

18 U.S.C. § 1964(c) ............................................................................................ 16

18 U.S.C. §§ 1341, 1343...................................................................................... 8

28 U.S.C. § 1331.................................................................................................. 24

28 U.S.C. § 1367(c)(3)......................................................................................... 25

Fed. R. Civ. P. 12(b)(1) and (6) ......................................................................... 10

## Federal Rules

Fed. R. Civ. P. 56 ................................................................................................................ 3

## State Rules

MCR 2.612 ...................................................................................................................... 17

MCR 2.612(C) ...................................................................................................... 5, 12, 16

MCR 3.211(B)(3) ........................................................................................................... 17

**INTRODUCTION**

This action is the latest salvo in Plaintiff's ongoing campaign to collaterally attack the final judgment entered in her divorce action by a state court over four years ago.  In a desperate attempt to find federal jurisdiction, Plaintiff has filed a Complaint loaded with inflammatory and conclusory allegations that Kevin Reffitt, his father, and his now deceased brother are guilty of committing criminal racketeering in violation of RICO.

This is Plaintiff's <u>fourth</u> attempt to litigate the extent of her rights in the Peninsula Stock arising from her marriage to her ex-husband, Kevin Reffitt.   In the initial divorce proceeding, Plaintiff conducted full discovery regarding Mr. Reffitt's interest in the Peninsula Stock, and the parties were set to go to trial over, among other things, the valuation of the Stock and the legitimacy of Mr. Reffitt's sale of that stock to his father.  Plaintiff decided not to risk an adverse verdict on those issues and entered into the consent judgment of divorce, which split the proceeds of the Stock sale equally between Plaintiff and Kevin Reffitt.  Several years later, Plaintiff filed a motion with the family court to reopen the consent judgment, based on the same discovery fraud theory raised in this Complaint.  The family court denied that motion.  Not satisfied with this outcome, Plaintiff then filed a separate lawsuit asserting the same discovery fraud theory in the Grand Traverse County Circuit Court.  That suit was dismissed, with the Michigan court explicitly instructing that Plaintiff must bring her claims, if anywhere, in the divorce proceeding before the family court.  Plaintiff ignored those instructions.  Instead, she repackaged her discovery fraud claims in this federal action, where she attempts to recast the alleged discovery fraud in the divorce proceeding as criminal racketeering in violation of RICO.

This suit must be dismissed for multiple reasons.  First, the final judgment in the divorce proceeding clearly precludes this action.  Second, Plaintiff's only basis for federal jurisdiction are her two RICO claims, which are entirely deficient and fail to state claims as a matter of law.

1

Finally, this Court should decline to exercise supplemental jurisdiction over any remaining state

law claims. Defendants request that this honorable Court dismiss the Complaint in its entirety

with prejudice, and award Defendants all of the costs, expenses, and attorney fees that they have

been forced to incur in defending this frivolous action.

## BACKGROUND

### I.   Procedural History

Because the extensive litigation preceding this action provides multiple independent

bases for dismissal, a discussion of these prior proceedings is necessary and appropriate here.

#### a.   The Divorce Proceeding

All of the conduct that Plaintiff complains of in this action occurred in the context of

divorce proceedings between Plaintiff Dawn Bachi-Reffitt and Defendant Kevin Reffitt before

the Grand Traverse County Circuit Court, Family Division (the "**Family Court**"), Case No. 12-

9032-DM (herein, the "**Divorce Proceeding**"). The Divorce Proceeding was filed over five

years ago, on February 9, 2012. (Compl. ¶ 7.) The parties engaged in litigation over fourteen

months before reaching a settlement and consent judgment in the matter on April 19, 2013. (the

"**Consent Judgment**," attached as Ex. A of Compl.)

The Divorce Proceeding commenced through discovery, with the Family Court

establishing deadlines for the parties to complete discovery and exchange all "appraisals of real

and personal property." (*See* Scheduling Order, attached as **Exhibit A**.)[1] The stock transfer was

a contested issue from the start. Plaintiff's attorney served numerous discovery requests on

Kevin Reffitt that were "primarily designed to find out what interest he has in the Peninsula

---

[1] The Court may properly consider public court filings when deciding this Motion. *See New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.").

Construction entities," and Plaintiff identified "any and all records concerning [Peninsula]" in her exhibit list.  (3/14/2012 letter and 4/13/2012 Exhibit list, attached as **Exhibit B**.)

Kevin Reffitt fully disclosed that he was owner of Pencon (referred to in the Complaint and herein as "**Peninsula**"), and that he sold his Peninsula stock (the "**Stock**") to his father days before filing for divorce.  He disclosed the date of the Stock transfer, that he sold the Stock to his father, and the consideration that he received from that transfer.  (*See* Answers to Interrogatories dated 3/28/2012, Nos. 43 & 44, attached as **Exhibit C**;[2] Answers to Second Interrogatories and First Request for Documents dated 5/11/2012,[3] attached as **Exhibit D**.)  He provided Plaintiff's attorney with the option agreement (which is attached to the Complaint as Exhibit Q), corporate consents, stock certificates, and other information relating to the transfer.  (*Id*.)

Discovery regarding the Stock occurred months before Plaintiff entered into the Consent Judgment.  In the spring of 2013, the parties were engaged in intense negotiations and gearing up for trial.  Kevin Reffitt filed a trial brief on March 8, 2013.  (attached as **Exhibit E**).  He disclosed that he realized $150,000 in proceeds from the Stock sale and that those proceeds were placed in a Huntington CD, and he proposed dividing those proceeds equally.  (*See* **Ex. E**, Tr. Br. at 2-3, 8 & Exhibit A thereof captioned "Reffitt Marital Estate").

---

[2] Plaintiff's claims center around the theory that Kevin Reffitt committed mail fraud through his discovery responses in the Divorce Proceeding, but Plaintiff has failed to attach those responses to her Complaint, presumably because they undermine her fraud theory.  It is appropriate for this Court to consider these discovery responses in the context of this Motion, without converting it to a Motion under Fed. R. Civ. P. 56.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").
[3] This set of discovery requests by Plaintiff focuses almost exclusively on seeking information regarding Peninsula and/or the Stock transaction.  (*See* **Ex. D**.)

The valuation and/or sufficiency of consideration that Kevin Reffitt received in the Stock transfer was a key disputed issue to be litigated at trial in the Divorce Proceeding. (*See id.*, Tr. Br. at 5.) Mr. Reffitt had identified Peninsula's accountant, Brad Niergarth, as an expert witness (Witness List, attached as **Exhibit F**), and described the extensive discovery that he provided regarding the Stock and the valuation of Peninsula during the Divorce Proceeding:

> [Kevin Reffitt] has made the corporate accountant, Brad Niergarth, available to [Dawn Bachi-Reffitt's] attorney in order to verify the economic strength of the company. [Mr. Reffitt] has extended to [Ms. Bachi-Reffitt's] counsel the opportunity to review the accountant's financial information at a joint meeting. [Ms. Bachi-Reffitt's] counsel was able to ask and inquire of the corporate accountant any and all questions relative to the financial status of the company. In addition, [Ronald Reffitt] has provided [Ms. Bachi-Reffitt] with information supporting the financial condition of the company.

(**Ex. E**, Trial Br. at 6.) Accordingly, the Stock transfer and valuation of Peninsula was a disputed issue in the Divorce Proceeding, and Plaintiff would have had every opportunity to contest the legitimacy of the Stock transfer, or offer evidence demonstrating a higher value of Peninsula at trial. But rather than incur this expense and risk an unfavorable outcome at trial, Plaintiff decided to settle by entering into the Consent Judgment.

### b. The Consent Judgment

The parties' respective property rights arising from their marriage (and the dissolution thereof) were divided and fully and finally adjudicated by the Consent Judgment. (*Id.* ¶¶ 1-12.) The Consent Judgment equally divided the proceeds of the Stock sale between Plaintiff and Mr. Reffitt. (*See* Consent Judgment ¶¶ 2-3; **Ex. L**, Br. in Response to Motion for Relief from Judgment at 3-4, 8; **Ex. E**, Tr. Br. at 2-3, 8, Ex. A.) The parties expressly stated "that the terms of this Judgment of divorce forever settle any and all claims or rights between them arising out of their marriage and subsequent divorce ..." (Consent Judgment ¶ 21.) They further provided a broad mutual release for any and all claims up to the date of entry of the Consent Judgment. (*Id.* ¶ 20.) The parties and their attorneys signed the Consent Judgment and submitted it to the

4

Family Court, which entered it on April 19, 2013.  The Family Court "specifically reserve[d] and retain[ed] jurisdiction over this cause and the parties," (*Id*. ¶ 27), and enforcement mechanisms are stated in the Consent Judgment, providing specific procedures and remedies in the Family Court to address allegations of fraudulent concealment of marital assets.  (*See id*. ¶¶ 24-25.)

### c.       Post-Judgment Proceedings and Actions filed by Plaintiff in State Court

This case follows two failed attempts by Plaintiff to set aside and relitigate the property division under the Consent Judgment.  On June 17, 2014, Plaintiff filed a motion for relief from judgment of divorce in the Family Court, alleging that Kevin Reffitt "hid assets during the course of the divorce," including "an ownership interest in a construction firm that was transferred back to his father."  (Motion for Relief from Judgment of Divorce, ¶¶ 4-5, Motion and Brief in Support attached as **Exhibit G**).   Plaintiff argued that Kevin Reffitt and his father "hid [Kevin's] ownership in the firm, specifically so that it would not be considered an asset at the time of divorce."  (**Ex. G**, Brief in Support of Motion for Relief at 5.)  Plaintiff asked the Family Court to "reopen the case and allow for a hearing," and "to grant [Plaintiff] relief from her Judgment of Divorce for fraud on the Court."  (**Ex. G**, Motion for Relief, ¶¶ 10-11.)

Kevin Reffitt responded to the Motion by filing a Brief in Opposition with supporting exhibits.  (**Ex. L**, Resp. in Opp. to Motion for Relief from Judgment.)  He argued that the motion was time-barred under the Michigan Court Rules (*id.* at 5), and also explained to the Court that the Motion had no merit.  (*Id*. at 7-8.)  At a hearing held on August 8, 2014, the Family Court denied Plaintiff's motion for relief from judgment as untimely under the Michigan Court Rules, MCR 2.612(C), which requires any motion for relief from judgment based on "fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of the adverse party" to be brought "within one year after the judgment ... was entered."  *See* MCR 2.612(C)(1)(c); MCR 2.612(C)(2); 8/21/2014 Hrg. Tr. at 10-13 and Or. Denying Relief from Judgment, attached as **Exhibit H**.

Not satisfied with this outcome, Plaintiff filed a new, separate action against Kevin and Ronald Reffitt in the Grand Traverse County Circuit Court, Case No. 14-30536-CZ . (*See* First Am. Compl., attached as **Exhibit I**.)  Plaintiff alleged eight separate causes of action, based on the exact same intrinsic discovery fraud theory asserted in this case.  (*Id.* ¶¶ 12-27, 36-68.) Kevin and Ronald Reffitt sought dismissal of all counts because, among other things, Michigan law does not allow a party to bring an independent fraud action based on alleged discovery fraud that occurred in a prior proceeding.

The Circuit Court Judge, Judge Power, agreed at a hearing on November 17, 2014, and dismissed the action in its entirety.  (11/17/2014 Hrg. Tr. and Order of Dismissal, attached as **Exhibit J**.)  Judge Power noted that it was inappropriate for Dawn Bachi-Reffitt to file a separate suit based on fraud that allegedly occurred during the Divorce Proceeding (*id.* at 6-7), and held:

> I am going to dismiss the case without prejudice and you can assert it, if at all, I would suggest as a motion within the divorce case.  But, however it's done it should be related to the divorce case not here.  [*Id.* at 7.]

## II.    Allegations and Claims Alleged by Plaintiff in this Action

Having been rejected by two Michigan circuit courts, Plaintiff's latest improper attempt to attack the Consent Judgment collaterally is this federal RICO lawsuit, which is substantively identical to the action for discovery fraud that Plaintiff attempted to bring in the Michigan circuit court. (*Compare* Compl. to First Am. Compl, **Ex. I**.)  The only difference is that here, in a desperate attempt to find federal jurisdiction, Plaintiff has added nebulous and conclusory allegations that the alleged discovery fraud in the Divorce Proceeding was a pattern of criminal racketeering by an "enterprise," in violation of RICO, 18 U.S.C. § 1961 *et. seq.*

The gravamen of the Complaint is still Plaintiffs' claim that she was fraudulently induced to enter into the Consent Judgment because Kevin Reffitt took the position in that proceeding and prior to trial that the Stock was sold for fair consideration.   Plaintiff's substantive

allegations are that Ronald Reffitt transferred the ownership of Peninsula to Ronald Reffitt Jr. and Kevin Reffitt in 2006. (Compl. ¶ 86.) On or about November 15, 2011, Ronald Reffitt presented his sons with an Option Agreement (Compl. ¶ 97), which would allow Ronald Reffitt to purchase their shares in Peninsula, for the consideration set forth in an Option Agreement. (Compl. ¶¶ 97-98; Exhibit Q of Complaint, Option Agreement ¶ 2.) Plaintiff makes conclusory allegations that Kevin and Ronald had hatched a "scheme" during this time to "strip the company of value" to justify the price paid under the Option Agreement (*id.* ¶ 103), without offering any specifics.

Ronald Reffitt exercised his option two days before Kevin Reffitt initiated the Divorce Proceeding, on February 7, 2012. (Compl. ¶ 104.) Plaintiff alleges that "the option agreement was actually signed *after* the divorce was filed and back-dated to February 7, 2012, through Karen Wierenga's fraudulent notarization." (*Id.*) Although Plaintiff repeatedly suggests that this alleged backdating demonstrates a fraudulent scheme of some sort, she makes no effort to explain how she was allegedly defrauded by the alleged backdating. She does not allege that Michigan law assigns any significance or consequences to the date a divorce action is filed, that the date of divorce filing "locks in" what is and is not martial property, or that the fact that property is transferred immediately before instead of immediately after the date of that divorce filing has any legal relevance whatsoever. Plaintiff also openly admits that Reffitt disclosed the terms of the Option Agreement and Stock sale prior to entry of the Consent Judgment (Compl. ¶ 106), and the Divorce Proceeding record reflects that this disclosure was made to Plaintiff <u>and her attorney</u> over a year before the Consent Judgment was entered, in March of 2012. (**Ex**. **C**.) The value of the Stock and the extent of Plaintiff's rights therein –were plainly disputed issues of fact to be resolved at trial in the Divorce Proceeding.

<u>*Every Count of the Complaint Asks this Court to Reopen, Modify, or Ignore the Property Division Established by the Consent Judgment.*</u>

In Counts I and II of the Complaint, Plaintiff alleges that Kevin Reffitt committed fraud in the Divorce Proceeding that induced her to agree to an allegedly less favorable property division in the Consent Judgment.  (*Id.* ¶ 150.)  Count III requests the remedy of constructive trust, asking the Court contradict the Consent Judgment by finding that Plaintiff was entitled to a more favorable property division thereunder, and impose a constructive trust on the Stock on that basis. (Compl. ¶¶ 161-163.)  Counts IV and V broadly recast Plaintiff's discovery fraud allegations as predicate acts of mail and/or wire fraud, and then try to leverage those into a claim that Defendants engaged in a pattern of criminal racketeering in violation of RICO.  (Compl. ¶¶ 164-180.)  Count VI asks this Court to order an audit of the Stock, based on Plaintiff's theory that the property division in the Consent Judgment should have awarded her all of the Stock. (Compl. ¶¶ 182-184.)  Finally, Count VII alleges that because Dawn did not receive all of the Stock under the Consent Judgment, all of the Defendants were unjustly enriched in some unspecified way.  (Compl. ¶ 187.)

<u>*RICO Allegations*</u>

As the only basis for federal jurisdiction, Plaintiff's RICO claims under Counts IV and V reflect her attempt to shoehorn her discovery fraud theory into a civil RICO action.  Plaintiff makes conclusory allegations that Kevin Reffitt's family "formed the 'Reffitt Enterprise,'" and then characterizes the alleged discovery fraud by Kevin Reffitt in the Divorce Proceeding as predicate crimes in violation of the federal mail fraud and/or wire fraud statutes, 18 U.S.C. §§ 1341, 1343.  (Compl. ¶¶ 167-68.)

Although the Complaint spares no opportunity to drag the entire Reffitt family through the mud, the precise nature of the alleged enterprise and/or pattern of racketeering that

Defendants are alleged to have engaged in is elusive. Plaintiff first vaguely claims that Ronald Reffitt, Sr. assisted Kevin Reffitt's brother, Ronald Reffitt, Jr., in hiding marital assets during his divorce in 2006. (Compl. ¶¶ 24; Exhibit B of Compl.) But nowhere does the Complaint describe any predicate crimes committed during this wholly unrelated proceeding, which under Plaintiff's theory would be acts of mail or wire fraud that must be pleaded with particularity.

Plaintiff also devotes over eight pages of the Complaint to a discussion of an ongoing dispute between Plaintiff and Kevin Reffitt regarding the proceeds of the Pruco life insurance policy. (*See* Compl. ¶¶ 41-85.) This extensive and largely irrelevant discussion boils down to Plaintiff's allegations that Kevin Reffitt's attorney sent discovery responses to Plaintiff's attorney containing alleged misrepresentations regarding the Pruco Policy in the Divorce Proceeding, which Plaintiff claims constitute predicate crimes of mail and/or wire fraud. (Compl. ¶¶ 47-52, 58.) Plaintiff's claim regarding the Pruco Policy is being pursued in post judgment proceedings in the Family Court, and she is explicitly not asserting any claim arising from the Pruco policy in this action. (*Id*. ¶ 34-35, 44.)[4]

Finally, Plaintiff devotes comparatively few pages of her Complaint to her actual claim in this case: that Kevin Reffitt committed mail or wire fraud by allegedly misrepresenting facts regarding the Stock transfer in litigation documents exchanged during the Divorce Proceeding. Plaintiff alleges, without particularity, that the discovery responses and a pre-trial statement that Kevin Reffitt's attorney sent to Plaintiff's attorney in the Divorce Proceeding contained false information and therefore constituted the predicate federal crimes of mail and/or wire fraud. (Compl. ¶¶ 108-109.) Plaintiff does not plead these alleged misrepresentations with the required

---

[4] The Complaint also offers no insight as to why Plaintiff opted to file this federal RICO action instead of pursuing her claim regarding the Stock in the proper forum, the Family Court.

particularity (indeed Plaintiff inexplicably fails to attach the relevant documents to the Complaint), leaving Defendants and this Court to guess as to what specific representations Plaintiff claims amounted to criminal acts of mail and/or wire fraud.[5]

In sum, Plaintiff has filed her 30-page Complaint accusing Kevin, his father, his mother, and his deceased brother of being organized criminals, purely to avoid litigating her discovery fraud claims in the proper forum of the Family Court. This is an action that should never have been filed, is utterly deficient as a matter of law, and must be dismissed.

## STANDARD FOR DISMISSAL

This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Rule 12(b)(1) motions challenge the existence of subject-matter jurisdiction. A motion under this rule attacks the claim of jurisdiction on its face, taking Plaintiff's jurisdictional assertions as true. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). Plaintiff has the burden of proving jurisdiction when challenged. *Giesse v. Sec'y of HHS*, 522 F.3d 697, 702 (6th Cir. 2008). Standing is a jurisdictional defense and is properly raised in a 12(b)(1) Motion. *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). The plausibility standard "does not impose a probability requirement," but requires sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56;

---

[5] Indeed, the pre-trial statement that Mr. Reffitt filed in the Divorce Proceeding makes no affirmative representations whatsoever regarding the Peninsula Stock. (*See* Pretrial Statement, attached as **Exhibit K**.)

*Iqbal*, 556 U.S. at 678. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

**I.    All of Plaintiff's Claims are Barred by the Consent Judgment in the Divorce Proceeding.**

The Consent Judgment adjudicated all property division issues on the merits, and expressly released the claims Plaintiff attempts to bring here.

### A.    Plaintiff's Complaint is precluded by the Consent Judgment.

When determining the preclusive effect of a state-court judgment, federal courts must look to that state's law and give the "judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist.*, 465 U.S. 75, 81 (1984); *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006).

> *1.    Michigan law does not allow Plaintiff to litigate alleged discovery fraud in the Divorce Proceeding by bringing a new action.*

In this action Plaintiff seeks to avoid or relitigate the Consent Judgment on the grounds that it was fraudulently procured. Michigan law precludes such suit, providing that "a second suit for fraud, based on perjury ("intrinsic fraud"), may not be filed against a person involved in a first suit, if the statutes and court rules provide an avenue for bringing the fraud to the attention of the first court and asking for relief there." *Daoud v. De Leau*, 565 N.W.2d 639, 649 (Mich. 1997). The Michigan Supreme Court has found that "the court rules are a primary source for determining the means by which a person aggrieved by a judgment may seek to remedy the situation." *Id*. at 648. This principle applies with equal force where the perjury or fraud occurs before a case is settled by the mutual agreement of the parties. *Triplett v. St. Amour*, 507 N.W.2d 194, 194 (Mich. 1993). These decisions are grounded in the respect for the Court rules and the

11

finality of judgments.  *See Daoud,* 565 N.W.2d at 549; *Triplett*, 507 N.W.2d at 197.  As

observed by the *Daoud* court, a rule allowing an independent action for fraud intrinsic to

litigation would necessarily require that the second suit re-determine matters already litigated in

the first suit.  *Daoud*, 565 N.W.2d at 648-49.  Such a rule would create mischief by allowing the

filing of endless new lawsuits disputing the outcome of prior proceedings, based on fraud.  *Id*.[6]

Michigan law is clear that Plaintiff cannot maintain this action as a new suit.  In

*Nederlander v. Nederlander*, the plaintiff filed a new suit for fraud, with virtually identical

allegations that her husband misrepresented the value of stock that he owned during a prior

discovery proceeding.  517 N.W.2d 768, 769 (Mich. App. 1994).  The Court dismissed the suit

for failure to state a claim upon which relief may be granted, finding as follows:

> If a party suspects that the other party has committed fraud during a divorce proceeding,
> then MCR 2.612(C)(1)(c) and (2) allows the party to seek redress within one year after
> the judgment is entered. On the other hand, we believe that allowing a party to file an
> independent action for fraud whenever the other party, more than one year after the
> divorce judgment is entered, liquidates assets or consummates a business transaction is
> contrary to the public policy behind the finality of judgments. The exercise of due
> diligence during the course of liberal discovery should expose any intrinsic fraud that
> may be present in the divorce proceeding. [*Id*. at 770.]

This case is indistinguishable from *Nederlander*.  Indeed, this issue has already been litigated.

After Plaintiff failed in her untimely attempt to reopen the Consent Judgment based on her

intrinsic fraud theory under MCR 2.612(C), she attempted to bring claims virtually identical to

those raised in the Complaint as a separate action in state court.  The Michigan circuit court

dismissed that action in its entirety, discussing and relying on *Nederlander* in its Opinion.  (**Ex**.

---

[6] Federal courts have enforced this rule to preclude lawsuits attempting to litigate intrinsic fraud.  *See*,
e.g., *Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*, No. 14-11358, 2016 WL 2622352, at *5 (E.D.
Mich. May 9, 2016) ("Giasson's only avenue for pursuing its fraud claim is to file a motion for relief from
judgment in the original action. That motion, however, would likely be time barred. Regardless, no cause
of action lies here under Michigan law.")

**J**, Tr. at 4-6.)  All of Plaintiff's claims in this action are based on alleged fraud intrinsic to the Divorce Proceeding, and are precluded as a matter of Michigan law.

> 2.    *Plaintiff's claims are barred by res judicata.*

Plaintiff's claims are further barred by res judicata.  Michigan courts have adopted a broad understanding of the preclusive effect of res judicata. *Dart v. Dart*, 597 N.W.2d 82, 88 (Mich. 1999).  "Michigan courts . . . have barred, not only claims *already litigated*, but *every claim arising* from the same transaction that the parties, exercising reasonable diligence, *could have raised* but did not."  *Id*. (emphasis added).  Res judicata bars a subsequent action when "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004).

First, there is no question that the Divorce Proceeding was decided on the merits by the Consent Judgment.  Under Michigan law, "[r]es judicata applies to consent judgments."  *Ditmore v. Michalik*, 625 N.W.2d 462, 466 (Mich. App. 2001).  Second, there can be no dispute that both actions involve the same parties.  Plaintiff and Kevin Reffitt were the parties to the Divorce Proceeding, and are also parties to the current action.

Finally, the matters asserted in this case were, or could have been, resolved in the Divorce Proceeding.  Michigan employs "a transactional test to determine if the matter could have been resolved in the first case." *Washington v. Sinai Hosp. of Greater Detroit*, 733 N.W.2d 755, 760 (Mich. 2007).  The "'transactional' test provides that 'the assertion of different kinds or theories of relief still constitutes a single cause of action if a *single group of operative facts* give rise to the assertion of relief.' " *Adair*, 680 N.W.2d at 397 (emphasis added). If the same facts or evidence would sustain both actions, the two actions are considered the same for purposes of res judicata. *In re Koernke Estate*, 425 N.W.2d 795, 796 (Mich. App. 1988).

It is beyond question that this action involves the *exact* same facts and dispute at the heart of the Divorce Proceeding.  Plaintiff investigated the Peninsula Stock in discovery, and the nature of the Stock transfer, the value of Peninsula, and the consideration received by Kevin Reffit in the Stock sale were key issues to be litigated at trial in the Divorce Proceeding. Furthermore, to the extent that Plaintiff believed that the other Defendants had conspired with Kevin Reffitt to remove assets from the marital estate, she had every right to pursue those assets in the Divorce Proceeding.  *See Donahue v. Donahue*, 352 N.W.2d 705, 710 (Mich. App. 1984). The parties avoided trial over these disputed issues by entering the Consent Judgment under which they agreed to split the Stock sale proceeds, and "forever settle[d] any and all claims or rights between them arising out of their marriage and subsequent divorce."  (Consent Judgment ¶ 21); *see also Colestock v. Colestock*, 354 N.W.2d 354, 356 (Mich. App. 1984) ("A judgment of divorce dividing marital property is res judicata and not subject to collateral attack.")

The preclusive effect of the Divorce Proceeding is further supported by the nearly identical case of *Evans v. Dale*, 896 F.2d 975, 978 (5th Cir. 1990), in which the Fifth Circuit concluded that the plaintiff's RICO action was barred by the judgment in a prior divorce proceeding, finding:

> "Under Texas law, res judicata bars litigation of all issues connected with a cause of action that might, with due diligence, have been raised in the former action between the same parties or their privies." This rule bars the relitigation . . .  of the value of items in the community estate, *even when one spouse may have been guilty of misrepresentation as to the value of that item.* The preclusive effect of the Texas court's property valuation extends with full force to the federal courts.  [*Id.* at 977 (citations omitted).]

Res judicata "is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *TBCI, PC v. State Farm Mut Auto Ins. Co.*, 795 N.W.2d 229 (Mich. Ct. App. 2010). Plaintiff has now attempted to revisit and religitate the final property division under the Consent

Judgment *three times*.  Plaintiff's Complaint is barred by res judicata.  This Court should put an end to this vexatious gamesmanship.

> 3.   *Plaintiff expressly released, settled, and discharged all of the claims she has asserted in this action under the plain and unambiguous terms of the Consent Judgment.*

Because the Consent Judgment was entered in Michigan, it must be interpreted under Michigan law.  *Sawyer v. Arum,* 690 F.2d 590, 593 (6th Cir. 1982).  Consent judgments are interpreted in the same manner as contracts.  *Brown v. Neeb,* 644 F.2d 551, 557 (6th Cir.1981).  The scope of a release is governed by the intent of the parties as expressed in the release*, Rinke v. Auto. Moulding Co.*, 573 N.W.2d 344, 345-46 (Mich. App. 1997), and the unambiguous text of the release controls.  *Id.*  The proper interpretation of a release is a question of law for the court. *Id.* (*citing Cole v. Ladbroke Racing Mich., Inc.*, 614 N.W.2d 169, 176 (Mich. App. 2000)).

Here, Plaintiff agreed that the Consent Judgment "forever settle[d] any and all claims or rights between [Plaintiff and Kevin Reffitt] arising out of their marriage and subsequent divorce."  (Consent Judgment ¶ 21, Ex. A of Compl.)  She further released and "forever discharged" Mr. Reffitt from any and all actions, suits, claims and demands "whatsoever," which she has "ever had, now has or may hereafter have" against Mr. Reffitt, "upon or by reason of any matter, cause, or thing, up to the date of [the Consent Judgment]."  (*Id.* ¶ 20.)  This broad and unambiguous language is set forth in the final Consent Judgment that the Family Court entered as a final judgment, and has refused to set aside.  (*See* **Ex. H**, Or. Denying Relief from Judgment); *see also Stefanac v. Cranbrook Educ. Comm.*, 458 N.W.2d 56, 60 (Mich. 1990) ("It is a well-settled principle of Michigan law that settlement agreements are binding until rescinded for cause.")  Every single allegedly fraudulent act set forth in the Complaint—including all alleged predicate acts of racketeering—occurred prior to entry of the Consent Judgment on April 19, 2013.  Plaintiff broadly released the claims she attempts to raise here.

15

The Consent Judgment also unambiguously releases Plaintiff's discovery fraud claims. In *Dresden v. Detroit Macomb Hosp. Corp*., the plaintiff argued that in discovery her opponent falsely represented that it "could not locate" a crucially relevant chest x-ray, when in fact the x-ray had been intentionally destroyed, and this fraudulently induced her to enter into a settlement that released "any and all claims." 553 N.W.2d 387, 389 (Mich. App. 1996). The court rejected the plaintiff's claim, finding that because the language released "any and all" causes of action, it was "sufficiently broad" to include Plaintiff's fraudulent inducement claims. (*Id*. at 390.)[7]

The Consent Judgment's release language contains "any and all" language as in *Dresden*, and therefore plainly bars her claims. Indeed, the release in this case is even broader than the language in *Dresden*, because it is paired with language stating the parties' intent to "forever settle any and all claims or rights between [Plaintiff and Kevin Reffitt] arising out of their marriage and subsequent divorce." (Consent Judgment ¶ 21, Ex. A of Compl.) Plaintiff's claims are unambiguously barred by the Consent Judgment as a matter of law.

### 4. *Plaintiff Lacks Standing*.

To establish standing, Plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is "concrete and particularized," and it must be "likely" that the injury is redressable by the Court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Additionally, Plaintiff must specifically demonstrate that she was "injured in her business or property" to pursue her RICO claims. 18 U.S.C. § 1964(c); *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013). "[T]he requirement of injury in one's 'business or property' limits the availability of RICO's civil remedies to those who have

---

[7] The *Dresden* Court also rejected Plaintiff's effort to bring a new lawsuit based on alleged perjury as improper, finding that "plaintiff's remedy, if any" was to seek relief from judgment in the original suit under MCR 2.612(C). *Dresden*, 553 N.W.2d at 391.

suffered injury in fact." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, (1992).

Here, Plaintiff's theory is that if not for her ex-husband's alleged discovery fraud in the Divorce Proceeding, she would have received a more favorable property division from her husband in that case.  But the Consent Judgment fully adjudicated and determined all of Plaintiff's property rights arising from her marriage to Kevin Reffitt.  *See* Consent Judgment ¶ 21, Ex. A of Compl; MCR 3.211(B)(3); *Byington v. Byington*, 568 N.W.2d 141 (Mich App. 1997) (stating that under Michigan law, "a judgment of divorce must include a 'determination of the property rights of the parties.'")  This property division is "typically final and cannot be modified by the court."  *Quade v. Quade*, 604 N.W.2d 778, 780 (Mich. App. 1999).  Michigan law allows a party to set aside a property division on the basis of fraud, but only by timely moving to reopen the judgment under MCR 2.612.  *Nederlander*, 517 N.W.2d at 770.

Here, all of Plaintiff's claims in the Complaint would necessarily require the reopening or modification of the property division in that Consent Judgment, which the Family Court has refused to do.  (**Ex. H**, 8/21/2014 Hrg. Tr. & Or. Denying Relief from Judgment.)  Accordingly, as a matter of Michigan law Plaintiff has no right, title, or interest in the Stock as a matter of Michigan Law.  Plaintiff also cannot establish standing based on a "mere expectation" that the Family Court may hand her a favorable ruling regarding the Stock at some point in the future. *See Pohlot v. Pohlot*, 664 F. Supp. 112, 116 (S.D.N.Y. 1987)  ("plaintiff's mere expectation of a favorable decree awarding her a share of [her husband's] assets in the state court matrimonial action does not constitute a property interest protected under RICO."); *Capasso v. CIGNA Ins. Co.*, 765 F. Supp. 839, 842 (S.D.N.Y. 1991) (same).  Plaintiff fails to sufficiently allege an injury in fact to her business or property as a matter of law, and lacks standing to pursue this action.

## II.    Plaintiff Fails to State a RICO Claim as a Matter of Law

The only federal claims alleged in the Complaint are under the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. Ch. 96 ("RICO"), a statute enacted to eradicate organized crime. Congress did not enact RICO intending to provide a federal forum to relitigate divorce decrees issued by state courts, and courts have proceeded with caution when faced with these types of claims. *See*, *e.g., Cohen v. Cohen*, 993 F. Supp. 2d 414, 423, 428 (S.D.N.Y. 2014) (dismissing civil RICO claims alleging fraudulent concealment of marital assets, observing that "domestic relations disputes are rarely the nebulae from which viable civil RICO claims coalesce [because] [t]hey tend to involve private concerns as opposed to matters of public importance"). Here, Plaintiff claims that when her ex-husband allegedly committed discovery fraud and hid assets with his family members in the Divorce Proceeding, it constituted mail fraud and therefore criminal racketeering in violation of RICO. Plaintiff fails to state a RICO claim as a matter of law.

### A.    Plaintiff fails to state a claim for a violation of 18 U.S.C. § 1962(c)

Count VI broadly alleges that all Defendants violated 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." To claim that any defendant violated this section, Plaintiff "must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006). Failure to allege even one of these required elements is fatal to Plaintiff's claim. *See Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 404 (6th Cir. 2012).

#### 1.    Plaintiff fails to allege a "pattern" of racketeering activity.

As a threshold matter, § 1962(c) requires allegations of a minimum two predicate acts— i.e., certain offenses enumerated in 18 U.S.C. § 1961(1)—that occur within a ten-year period.

*See Moon*, 465 F.3d at 723.  The inquiry here is defendant specific: to sufficiently allege that a defendant violated § 1962(c), a plaintiff must allege that *the particular defendant* committed the alleged predicate acts.  *See Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 605 (E.D. Mich. 2015).  Plaintiff fails to do this.  Instead, she alleges that Kevin Reffitt and/or his attorney committed mail fraud via litigation documents exchanged in the Divorce Proceeding, and then makes conclusory allegations that each defendant violated § 1962(c).  (Compl. ¶ 172.)

Furthermore, a plaintiff must go beyond merely alleging that a defendant committed two or more predicate acts.  "Although necessary to sustain a RICO claim, the pleading of two predicate acts may not be sufficient because [the RICO statute] 'assumes that there is something to a RICO pattern *beyond* the number of predicate acts involved.'"  *Moon*, 465 F.3d at 724 (quoting *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238, 109 S. Ct. 2893, 2900 (1989)).  Thus, a plaintiff must show that the predicate acts are related, have sufficient continuity, and amount to or pose a threat of continued criminal activity.  *Id.*  As the Supreme Court has explained, "[c]ontinuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241, 109 S. Ct. at 2902.  Plaintiff fails to sufficiently allege these requirements.

First, nothing in Plaintiff's Complaint alleges open-ended continuity, which "turns on whether the plaintiff has pleaded facts suggesting the threat of continued racketeering activities projecting into the future."  *Moon*, 465 F.3d at 726.  Here, Kevin Reffitt's alleged "scheme" to obtain a favorable property division in the Divorce Proceeding ended upon entry of the Consent Judgment.  The alleged scheme "could not have continued past that time because the purposes of the scheme had been accomplished."  *Griffin v. NBD Bank*, 43 F. Supp. 2d 780, 788 (W.D. Mich.

1999).

Second, Plaintiff also fails to plead closed-ended continuity.  To establish a closed period of continuity, a plaintiff must plead "a series of related predicates extending over a substantial period of time."  *H.J., Inc.*, 492 U.S. at 242.  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct."  *Id*.  Thus, racketeering activities lasting "a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."  *Id*.

Here, at the very most Plaintiff alleges predicate acts over no more than thirteen months, from the date that Kevin Reffitt provided allegedly fraudulent discovery responses in the Divorce Proceeding to the date the Consent Judgment was entered.[8]  Such a truncated series of alleged predicate acts is insufficient to establish closed-ended continuity.  Courts consistently dismiss claims based on alleged RICO enterprises lasting less than two years.  *See Am. Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 354 (6th Cir. 1990) (predicate acts over 18 months insufficient); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994), *cert. denied*, 513 U.S. 1017 (1994) (predicate acts over 17 months insufficient); *Vild v. Visconsi*, 956 F.2d 560, 569 (6th Cir. 1992) (predicate acts over 6-7 months insufficient); *Griffin v. NBD Bank*, 43 F. Supp. 2d 780, 788

---

[8] Plaintiff attempts to link the alleged discovery fraud "scheme" to events that occurred in 2007, by vaguely alleging that the now deceased Ronald Reffitt, Jr. defrauded his wife by selling his stock to Ronald Reffitt, Sr. in connection with in his 2007 divorce.  (*See* Compl. ¶¶ 24-25.)  First, these alleged events occurred years before the alleged discovery fraud by Kevin Reffitt in the Divorce Proceeding, and Plaintiff fails to plead with particularity that Ronald Reffitt, Jr. actually defrauded his ex-wife in that 2007 proceeding.  Second, and more importantly, even if Plaintiff had sufficiently alleged fraud by Ronald Reffitt, Jr. in 2007, Plaintiff has failed to plead with particularity any predicate criminal acts of mail and/or wire fraud occurring at this time.  (*See* Compl. ¶¶ 24-25.)  The lack of any predicate act is fatal to Plaintiff's attempt to accuse Kevin Reffitt's now deceased brother of criminal conduct in order to bolster her entirely contrived RICO theory.  *See also H.J.*, 492 U.S. at 241-42 (stating that RICO requires proof of continuous and multiple related and continuous predicate acts.)

(W.D. Mich. 1999) (predicate acts over 11 months insufficient).

Finally, Plaintiff has not alleged an actionable "pattern of racketeering activity," because the Complaint describes a single scheme targeting a single alleged victim, Plaintiff.  *See Vemco*, 23 F.3d at 135 ("We do not find that a defendant who engages in several different forms of fraud for a single purpose, to defraud a single victim through activities surrounding one construction project, without more, has engaged in more than one criminal scheme."); *Moon,* 465 F.3d at 725-26 (finding that all of the predicate acts were directed to a single victim over the course of two and a half years, and the claims thus failed to "bear the markings of the 'long-term criminal conduct' about which 'Congress was concerned' when it enacted RICO).  Plaintiff fails to allege a pattern of racketeering activity as a matter of law, and her § 1962(c) claim fails.

2.    *Plaintiff fails to allege a RICO enterprise.*

Because 18 U.S.C. § 1962(c) makes it unlawful for a person to commit racketeering in furtherance of an enterprise's affairs, Plaintiff must sufficiently allege an enterprise as a key element of her claim.  *In re ClassicStar Mare Lease Litigation*, 727 F.3d 473, 483 (6th Cir. 2013); *United States v. Chance*, 306 F.3d 356, 371–72 (6th Cir. 2002.  To establish the existence of an "enterprise," Plaintiff must sufficiently allege:

> 1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; 2) that the members of the enterprise functioned as a continuing unit with established duties; and 3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged.

*Chance,* 306 F.3d at 371–72, *citing Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993).

Here, Plaintiff's enterprise allegations are entirely conclusory.  (*See*, e.g., Compl. ¶¶ 10.)  Plaintiff defines the "Reffitt Enterprise" as Peninsula, Ronald Reffitt, Sr., Donna Reffitt, Kevin Reffitt, Ronald Reffitt, Jr. (deceased, 2013), and "the Defendants' association-in-fact, as defined by 18 U.S.C. § 1961(4)."  (Compl. ¶ 2.)  This simply identifies Kevin Reffitt's immediate family.

Nowhere does the Complaint describe any cohesive organizational framework for making and carrying out decisions within the "Reffitt Enterprise," or the respective duties or roles of the individuals within the enterprise.  And more importantly, Plaintiff fails to allege that the enterprise was separate and distinct from the alleged pattern of racketeering activity in which the enterprise is engaged.  To the contrary, Plaintiff describes the enterprise *in terms of the alleged racketeering activity*, as a group of people joined together "to accomplish their common purpose of defrauding Dawn."  (Compl. ¶ 171.)  The Sixth Circuit has observed that "simply conspiring to commit a fraud is not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes." V*anDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000) *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008).  Plaintiff fails to allege an enterprise as a matter of law.

   3.   *Plaintiff has not sufficiently pleaded the alleged predicate crimes.*

   a.   <u>Plaintiff fails to plead mail and/or wire fraud.</u>

"When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Heinrich*, 668 F.3d at 404 (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir.2008)).  Here, despite the length of the Complaint and the fact that all of the alleged fraudulent statements are apparently contained in written documents generated by attorneys and exchanged in the Divorce Proceeding, Plaintiff speaks in generalities.  None of her allegations regarding the various misrepresentations that Kevin Reffitt allegedly made regarding the Stock meets the particularity requirements described above.  (*See, e.g.*, Compl. ¶¶ 106, 172.)

22

The closest plaintiff gets to identifying any specific alleged misrepresentation is her general contention that Kevin Reffitt misrepresented that the stock sale occurred on February 7, 2012, when – according to Plaintiff – that transfer actually occurred several weeks later.  (*See* Compl. ¶¶ 108-109.)  But Plaintiff fails to explain how this alleged misrepresentation was fraudulent.  Even if the documents were backdated by a few weeks, all of the essential terms of the Stock transfer were fully disclosed in discovery no later than March 2012.  (**Ex**. **C**, Answers to Interrogatories dated 3/28/2012.)  Plaintiff does not allege that any legal consequences attached to the alleged backdating, and the record of the Divorce Proceeding demonstrates that Plaintiff's attorney investigated the Stock sale and valuation of Peninsula prior to entry of the Consent Judgment.  (*Id.*; **Ex**. **B**, 3/14/2012 letter; **Ex**. **E**, Trial Br. at 6.)  Plaintiff had every opportunity to conduct discovery, and in fact did file a motion to set the Stock sale aside as a fraudulent transfer, and seek to recover the full value of the Stock at trial.  The Complaint fails to allege any coherent theory that the alleged backdating was fraudulent or constituted a scheme or artifice to defraud Plaintiff, and fails to meet both the particularity requirements of *Heinrich*, 668 F.3d at 404, and the plausibility requirement of *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 570.

> b.      Plaintiff cannot establish mail fraud based on documents served in the Divorce Proceeding.

Every act of mail fraud alleged in the Complaint consists of a litigation document provided to Plaintiff in the Divorce Proceeding.  Courts have repeatedly rejected the idea that mail fraud can be predicated on litigation filings, because "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system."  *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002).  The Eleventh Circuit observed that "[s]erving a motion by mail is an ordinary litigation practice.  A number of

courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility."  *Id.*; *see also Nolan v. Galaxy Sci. Corp.*, 269 F. Supp. 2d 635, 643 (E.D. Pa. 2003) (rejecting argument that filing litigation documents can constitute predicate acts under RICO, and refusing to "dramatically" expand the mail fraud statute in a way that would potentially allow "any litigant to allege that the opposing party's submissions to the court denying allegations were false and therefore constituted mail fraud.")

The same principles apply here.  It would be a dramatic and unintended expansion of RICO to allow a litigant to settle a disputed case, release all claims, and then years later file a RICO action characterizing their opponent's filings in the prior proceeding as false and therefore mail fraud.  Plaintiff cannot allege predicate acts based on the ordinary exchange of filings in contested litigation, and fails to sufficiently allege mail and/or wire fraud.

### B. Plaintiff fails to state a conspiracy claim under 18 U.S.C. 1962(d).

Because Plaintiff has not sufficiently pleaded a 1962(c) claim, her conspiracy claim necessarily fails.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990).  Her conspiracy claim also fails because she fails to describe "an illicit agreement to violate the substantive RICO provision."  *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983).  Plaintiff merely suggests that the Defendants were somehow complicit in the alleged mail/wire fraud committed by Kevin Reffitt in the Discovery Proceeding, in a conclusory fashion.  (Compl. ¶ 177.)  Such conclusory allegations are not enough.  *Craighead*, 899 F.2d at 495.

### III. The Court should decline to exercise Supplemental Jurisdiction over the remaining claims.

The deficiently pleaded RICO claims are the only basis for federal question jurisdiction in this case, under 28 U.S.C. § 1331.  (Compl. ¶ 11.)  Because those claims must be dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining claims under

28 U.S.C. § 1367(c)(3). Federal courts should not retain supplemental jurisdiction of state-law claims when the claims creating a federal question are dismissed. *See Taylor v. First of Am. Bank*, 973 F.2d 1284, 1287 (6th Cir. 1992).

## CONCLUSION

This case is Plaintiff's fourth attempt to litigate the property division in her divorce, her third effort to reopen the Consent Judgment, and her second collateral attack on the Consent Judgment by way of a new and separate lawsuit. This is an action that should never have been filed and, as set forth above, there are multiple reasons why the Court must dismiss this suit. Furthermore, Plaintiff's Complaint is littered with innuendo and inflammatory attacks against her ex-husband and his family, making baseless accusations in federal court that the Reffitt family is a criminal racketeering enterprise. Plaintiff's conduct in filing this barred action is beyond the pale, and Defendants respectfully request that this honorable Court dismiss this suit in its entirety, and award them all of the costs, expenses, and fees that they have incurred in defending against this frivolous action.

Dated:  June 9, 2017                           *s/Thomas M. Amon*
                                               Conor B. Dugan
                                               Thomas M. Amon
                                               Ashley G. Chrysler
                                               WARNER NORCROSS & JUDD LLP
                                               tamon@wnj.com

                                               *Attorney for Defendants*

25