UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAWN M. BACHI-REFFITT,

        Plaintiff,

v.                                              Case No. 1:17-CV-263

KEVIN REFFITT, RONALD                      HON. GORDON J. QUIST
REFFITT, SR., KAREN WIERENGA,
and PENCON, INC.,

        Defendants.
_____/

## OPINION REGARDING DEFENDANTS' MOTION TO DISMISS
## AND MOTION FOR RULE 11 SANCTIONS

Plaintiff, Dawn Bachi-Reffitt, and Defendant Kevin Reffitt were married for approximately

eighteen years when Kevin filed a complaint for divorce. The divorce became final on April 19,

2013, following the entry of a Consent Judgment of Divorce. Thereafter, Dawn concluded that,

during the divorce proceeding, Kevin had committed fraud in connection with the sale of his stock

in his family construction business to his father for "in excess of $1 million" (ECF No. 13-7 at

PageID.298), and filed a motion for relief from judgment in the family court. The family court

judge denied relief, as did a circuit judge in a subsequent, separate lawsuit that Dawn filed alleging

that Kevin defrauded her in the divorce proceeding.

Undeterred, Dawn has come to federal court, recasting her fraud claims as violations of the

Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.* Dawn also

asserts fraud and other state-law claims. Defendants have filed a motion to dismiss pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and a separate motion for Rule 11 sanctions,

which are fully briefed. Because Dawn's claims (including her RICO claim) allege intrinsic fraud—that is, fraud committed in the course of the divorce proceeding— and her RICO claims are barred by the doctrine of res judicata and the broad release set forth in the Consent Judgment, Dawn must seek relief (assuming it is available) in the family court that entered the Consent Judgment. In addition, even assuming that Dawn's RICO claims are not otherwise barred, they are nonetheless subject to dismissal because Dawn lacks statutory standing to maintain her RICO claims. Therefore, the Court will grant Defendants' motion to dismiss. In addition, the Court will grant Defendants' motion for Rule 11 sanctions.

## I. BACKGROUND

### A. Pre-Divorce

Dawn and Kevin were married in 1993 and had three children together. (ECF No. 1 at PageID.4; ECF No. 1-2 at PageID.41.) During the marriage, Kevin worked in his family's construction business, Peninsula Construction.[1] In 2006, Kevin and his brother, Ronald Reffitt, Jr. (Reffitt, Jr.), purchased all the outstanding stock of Peninsula from their father, Ronald Reffitt, Sr. (Reffitt, Sr.), when he retired from the business. (ECF No. 1 at PageID.6.) Kevin and Reffitt, Jr. each received a 50% interest in Peninsula. (*Id.*) Sometime after the stock purchase, Kevin and Reffitt, Jr. purchased life insurance policies on each other in the amount of $1.5 million, for the apparent purpose of funding the purchase of each other's interest in Peninsula in the event of death. Kevin was the owner and beneficiary of the policy insuring Reffitt, Jr.'s life, and Reffitt, Jr. was the owner and beneficiary of the policy insuring Kevin's life. (*Id.* at PageID.2, 6.) On or about November 15, 2011, Reffitt, Sr., Reffitt Jr., and Kevin entered into an Option Agreement granting Reffitt, Sr. the right to purchase Kevin's interest in Peninsula. (*Id.* at PageID.20; ECF No. 1-18.)

---

[1] Although the parties refer to the business by various names, i.e., Peninsula Construction and Pencon, Inc., the Court will refer to the business herein generally as Peninsula or Peninsula Construction.

**B.     The Divorce Proceeding**

On February 9, 2012, Kevin filed for divorce from Dawn in the Grand Traverse County Circuit Court, Family Division.  Reffitt Sr. purportedly exercised his option to purchase Kevin's shares on February 7, 2012, two days before Kevin filed for divorce.  According to Dawn, however, the transfer documents were executed after the divorce proceeding was initiated, sometime after February 17, 2012, and backdated prior to the date Kevin filed for divorce.  (*Id.* at PageID.6–7.)

During the divorce proceeding, Dawn served discovery requests on Kevin, which sought, among other things, information regarding Kevin's ownership interest in Peninsula.  In his answers to Dawn's interrogatories and request for production of documents, Kevin disclosed that he had transferred his ownership interest in Peninsula to Reffitt, Sr. on February 7, 2012, and he stated the amount he received for his stock.  (ECF No. 13-3 at PageID.245–47; ECF No. 13-4 at PageID.252–53.)  In addition, Kevin gave Dawn's counsel copies of the option agreement, corporate consents, stock certificates, and other documents pertaining to the transfer.  (*Id.* at PageId.269–80.)

The value of Kevin's Peninsula ownership interest was one of the main issues in contention during the divorce case and was to be tried in April 2013.  In preparation for trial, Kevin filed a trial brief on March 8, 2013, which disclosed that Reffitt Sr. had purchased Kevin's stock based on an appraised value set in July 2011, and that Kevin received $150,000 from the sale of his stock, which was placed in a CD at Huntington Bank.  (ECF No. 13-5 at PageID. 283–84.)  Kevin also noted that Peninsula's corporate accountant, Brad Niergarth, had been available to Dawn's attorney to answer "any and all questions relative to the financial status of the company."  (*Id.* at PageID.287.)  Kevin proposed dividing the proceeds of the stock sale equally with Dawn.  (*Id.* at PageID.289.)

Rather than incur the expense of a trial and risk an adverse judgment, the parties decided to settle the division of the marital estate, and all other issues, and entered into the Consent Judgment to memorialize the settlement.  The Consent Judgment, entered on April 18, 2013, divided the

proceeds of the stock sale equally between Dawn and Kevin. (ECF No. 1-2 at PageID.37.) It also contained the following provisions:

**20.      Release of Claims:**

    **It is Further Ordered and Adjudged**, that except as otherwise herein expressly provided, the parties shall and do hereby mutually release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever both in law and in equity which either of them ever had, now has or may hereafter have against the other, upon or by reason of any matter, cause or thing, up to the date of the entry of this Judgment of Divorce.

**21.      Settlement of All Claims Arising Out of Marital Relationship:**

    **It is Further Ordered and Adjudged**, that the terms of this Judgment of Divorce forever settle any and all claims or rights between them arising out of their marriage and subsequent divorce, excepting the executory rights and obligations specifically set forth herein.

    . . . .

**25.      Disclosure by Parties:**

    That each of the parties hereto represents that he or she has made a full and complete disclosure to the other party of all assets and liabilities acquired during the course of the marriage and that this Judgment contains a complete itemization of the aforesaid assets and liabilities and the distribution thereof. Subsequent to the entry of this Judgment of Divorce, if it is determined by the Court that a party to this divorce action has concealed assets acquired or appreciated during the marriage, failed to disclose assets acquired or appreciated during the marriage or otherwise attempted to secret or conceal assets from the other party; the Court shall award to the non-offending party the entire value of the asset(s) identified as concealed.

    . . . .

**27.      Jurisdiction:**

    **It Is Further Ordered and Adjudged**, that this Court specifically reserves and retains jurisdiction over this cause and the parties for the purpose of assuring compliance with the executory provisions of this Judgment of Divorce and it reserves the right to make such other and further orders as shall be necessary to implement this Judgment including the use of the contempt powers of the Court.

(*Id.* at 44–46.)

## C.      Post-Consent Judgment Proceedings

On June 17, 2014, Dawn filed a motion for relief from judgment in the family court, pursuant to Michigan Court Rule 2.612(C)(1)(c) and/or 2.612(C)(1)(f), alleging that Kevin failed to disclose two assets during the divorce: (1) approximately $1.2 million in life insurance proceeds that Kevin received as the result of Reffitt, Jr.'s death; and (2) the ownership interest in Peninsula that Kevin transferred back to Reffitt, Sr., which Dawn alleged was worth in excess of $1 million.  (ECF No. 13-7 at PageID.298.)

Kevin responded, arguing that the motion lacked merit and, in any event, was untimely.  In particular, Kevin stated that he had fully disclosed his interest in Peninsula and the sale of his stock to his father, as well as the existence of the life insurance policy on Reffitt, Jr., during the divorce proceeding.  Kevin further stated that he did not receive insurance proceeds from the policy until after the Consent Judgment was entered.  (ECF No. 13-12 at PageID.376.)  The family court judge held a hearing on Dawn's motion on August 8, 2014, and denied it as time-barred.  In addition, the family court judge noted that Kevin disclosed the insurance policy and the stock sale to Dawn's counsel during the divorce proceeding.  (ECF No. 13-8 at PageID.319–20, 323–24.)

On or about October 28, 2014, Dawn filed a new, separate action against Kevin and Reffitt, Sr. in the Grand Traverse County Circuit court, alleging fraud and other claims based on the same failures to disclose that Dawn had previously raised in the family court.  (ECF No. 13-9.)  Kevin thereafter moved for dismissal, and the circuit judge held a hearing on November 17, 2014.  The circuit judge concluded that because the alleged fraud occurred during the divorce proceeding, Dawn should have raised the matter in the family court.  ((ECF No. 13-10 at PageID.359–60.)  Therefore, the circuit judge dismissed Dawn's complaint without prejudice to allow Dawn to raise it by motion before the family court in the divorce case.

Finally, although the family court judge initially denied Dawn's motion for relief from judgment, the judge, pursuant to paragraph 25 of the Consent Judgment, subsequently entered a judgment against Kevin in the full amount of the insurance proceeds from the life insurance policy on Reffitt, Jr., referred to as the Pruco Policy. (ECF No. 1 at PageID.8–9.) Reffitt, Jr. died on March 14, 2013—one month before the Consent Judgment was entered. The family court judge apparently found that Kevin failed to disclose that he owned the Pruco Policy, and that it was not a key man policy owned by Peninsula, as Kevin had represented.[2] On October 24, 2016, the Michigan Court of Appeals denied Kevin's application for leave to appeal. *Reffitt v. Bachi-Reffitt*, No. 333149 (Mich. Ct. App. Oct. 24, 2016). The Michigan Supreme Court thereafter denied Kevin's application for leave to appeal and his motion for reconsideration. *See* 500 Mich. 1021, 896 N.W.2d 792 (2017); 2017 WL 4050499 (Mich. Sept. 12, 2017).

## D.    Dawn's RICO Complaint

Dawn filed her complaint in the instant case on March 20, 2017, alleging claims under RICO and state law claims, including fraud, all based on Kevin's alleged failure to disclose and/or his misrepresentations in the divorce proceeding. Dawn devotes a substantial portion of her complaint to Kevin's concealment of the Pruco Policy, but her claims have nothing to do with the Pruco Policy—a matter which Dawn concedes was fully addressed by the family court. Instead, Dawn focuses on Kevin's sale of his Peninsula stock to Reffitt, Sr. Here, Dawn repeatedly emphasizes that Kevin and the other defendants signed the Option Agreement and other stock transfer documents after Kevin filed the divorce complaint and backdated the documents to February 7, 2012, but she fails to allege how the backdating defrauded her or impacted the value of Peninsula she accepted

---

[2]Key man life insurance is a "[t]ype of insurance coverage purchased by companies to protect them on the death or disability of a valued employee or by partnership to provide for funds with which to buy out the interest of such partner on his death or disability." *Black's Law Dictionary* 781 (5th ed.1979).

6

by entering into the Consent Judgment. Her claim, at bottom, is really that Kevin failed to disclose that he received less than fair value for his Peninsula stock, which caused her to receive less than she otherwise would have received under the Consent Judgment. (*Id.* at PageID.21.) In other words, Dawn alleges—as she did before the family court judge and the circuit court judge—that Kevin committed discovery fraud in the divorce proceeding.

## II. MOTION STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*,

---

[3]In her response, Dawn relies on the "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" standard from *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 102 (1957). However, the Supreme Court "retire[d]" that standard more than ten years ago, noting that it is a phrase "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).[4]

### III. DISCUSSION

#### A. Motion to Dismiss

As an initial matter, the Court must decide whether it may consider the documents Defendants have submitted in support of their motion. Dawn argues that, pursuant to Federal Rule of Civil Procedure 12(d), the Court should convert Defendants' motion to dismiss to one for summary judgment because Defendants rely on matters outside the pleadings. Dawn further argues that, once converted, the Court should deny the motion because the parties have not had an opportunity to conduct discovery. However, a court is not necessarily confined to the four corners of a pleading in deciding a motion to dismiss; courts may consider various documents without converting a Rule 12(b)(6) motion to one for summary judgment. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). For example,

---

[4] Defendants also bring their motion under Rule 12(b)(1) with regard to their argument that Dawn lacks statutory standing under RICO. The Sixth Circuit has implied, and other courts have expressly concluded, that a motion to dismiss for lack of statutory standing is in reality a motion to dismiss under Rule 12(b)(6). *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 626 (6th Cir. 2010) ("We review de novo the district court's grant of State Defendants' motion to dismiss for lack of statutory standing under Fed. R. Civ. P. 12(b)(6)."); *see also Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim."); *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974 n.7 (9th Cir. 2008) (noting that "the question of statutory standing is to be resolved under Rule 12(b)(6), once Article III standing has been established").

because Dawn's complaint refers to Kevin's sworn responses to interrogatories in the divorce proceeding pertaining to the stock transaction, (ECF No. 1 at PageID.7), the Court may properly consider Kevin's answers to Dawn's interrogatories and request for production in deciding the motion. Similarly, because Dawn refers to the Consent Judgment and attaches it to her complaint, the Court may refer to the Consent Judgment.

As for the transcripts from the family and circuit court hearings, the Court may consider them because they are "public record[s] capable of judicial notice." *Tutstone v. Garner*, No. 1:12CV2963, 2014 WL 991947, at *5 (N.D. Ohio Mar. 13, 2014) (citing *Berera v. MESA Med. Grp.*, No. 5:13-CV-294, 2014 WL 29386, at *2 (E.D. Ky. Jan. 3, 2014)). "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The hearing transcripts meet this requirement, as do the orders, pleadings, motions, and briefs that were filed in both state-court cases. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (noting that "we may take judicial notice of court filings and other matters of public record" and briefs and other documents filed in an underlying class action); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (noting that "the district court properly considered the public court documents in deciding the defendants' motions to dismiss"). However, the Court does not consider such documents for purposes of the truth of the matters asserted therein. Instead, the Court may consider them "for the fact that certain things were said, argued, and decided in th[ose] court[s]." *Can v. Goodrich Pump & Engine Control Sys., Inc.*, 711 F. Supp. 2d 241, 250 n.12 (D. Conn. 2010) (citations omitted); *see also Harvey E. Yates Co .v. Climax Energy Co.*, No. Civ. 12-857 JH/SMV, 2014 WL 11512599, at *2 n.1 (D.N.M. Mar. 5, 2014) ("[T]he Court may consider the transcript of the hearing for the purpose of showing that a hearing

occurred on the particular subject matter, but the Court cannot use the hearing transcript to prove the truth of the matters asserted therein without converting the motion to dismiss into one for summary judgment.") (citations omitted).

### 1.    Dawn May not Maintain an Independent Action Based on Intrinsic Fraud

Defendants argue that Michigan law precludes a party from maintaining a second or independent action to avoid a judgment that was fraudulently procured because the only avenue for relief in such case is a motion for relief from judgment pursuant to Michigan Court Rule (MCR) 2.612(C).   Defendants  argue that because Dawn is alleging that she was induced by Kevin's discovery fraud to enter the Consent Judgment, Dawn's exclusive avenue of relief is a motion for relief from judgment in the family court.   The Court agrees.

Michigan courts distinguish between extrinsic and intrinsic fraud when fraud committed during a lawsuit is alleged to have induced a settlement or a judgment.   "Extrinsic fraud is fraud outside the facts of the case: 'fraud which actually prevents the losing party from having an adversarial trial on a significant issue.'" *Sprague v. Buhaglar*, 213 Mich. App. 310, 313, 539 N.W.2d 587, 589 (1995) (quoting *Rogoski v. City of Muskegon*, 107 Mich. App. 730, 736, 309 N.W.2d 718, 721 (1981)).   Examples of extrinsic fraud include "keeping [the unsuccessful party] away from court by false promise of compromise, or purposely keeping him in ignorance of the pendency of the action." *Lawrence v. Cohn*, 932 F. Supp. 564, 575 (S.D.N.Y. 1996) (quoting *Tamimi v. Tamimi*, 328 N.Y.S.2d 477, 483 (1972)).   Intrinsic fraud is fraud that occurs within the case, such as "perjury, discovery fraud, fraud in inducing a settlement, or fraud in the inducement or execution of the underlying contract." *Sprague*, 213 Mich. App. at 314, 539 N.W.2d at 589.

In Michigan, in general, a party may not bring an independent action to seek relief from a judgment induced by intrinsic fraud because MCR 2.612(C), which is nearly identical to Federal

Rule of Civil Procedure 60(b), provides an effective avenue for vitiating such fraud. *Daoud v. De Leau*, 455 Mich. 181, 565 N.W.2d 639 (1997); *Triplett v. St. Amour*, 444 Mich. 170, 507 N.W.2d 194 (1993). In *Triplett*, the plaintiffs, who were defendants in the underlying personal injury action brought by Patricia S. Amour and her husband, brought an independent action alleging that the St. Amours fraudulently concealed Patricia's preaccident condition. Although the parties settled the St. Amours' claims, the *Triplett* plaintiffs did not request rescission of the settlement agreement, but instead asserted an action for fraud. A four-justice majority concluded that the plaintiffs failed to state a claim for an independent fraud action because MCR 2.612(C), along with court rules providing discovery sanctions, "provide[d] effective remedies." *Id.* at 179, 507 N.W.2d at 197. In *Daoud*, the court reaffirmed its holding in *Triplett* and clarified that "[w]here  statutes and court rules provide effective means for dealing with a judgment fraudulently obtained through perjury, it is neither sound law nor sound policy to permit a separate cause of action for fraud." 455 Mich. at 200, 565 N.W.2d at 648. In other words, the court said, the rule as framed in *Triplett* is that "a second suit for fraud, based on perjury ("intrinsic fraud"), may not be filed against a person involved in a first suit, if the statute and court rules provide an avenue for bringing the fraud to the attention of the first court and asking for relief there." *Id.* at 203, 565 N.W.2d at 649. This rule balances the need to provide relief from fraud perpetrated during litigation with the policy of finality of judgments. *Id.* at 201–03, 565 N.W.2d at 648–49.

In *Nederlander v. Nederlander*, 205 Mich. App. 123, 517 N.W.2d 768 (1994), the Michigan Court of Appeals applied the rule in *Triplett* to the plaintiff's independent action for monetary damages alleging that the defendant misrepresented the value of his interest in a business during the divorce proceedings. The plaintiff filed the independent action after the trial court determined that

her motion to set aside the judgment was untimely. Concluding that MCR 2.612(C)(1)(c) and (2) provided the appropriate avenues for the plaintiff's fraud claim, the court observed:

> [W]e believe that allowing a party to file an independent action for fraud whenever the other party, more than one year after the divorce judgment is entered, liquidates assets or consummates a business transaction is contrary to the public policy behind the finality of judgments. The exercise of due diligence during the course of liberal discovery should expose any intrinsic fraud that may be present in the divorce proceeding.

*Id.* at 127, 517 N.W.2d at 770 (citing *Columbia Cas. Co. v. Klettke*, 259 Mich. 564, 244 N.W. 164 (1932), and *Fawcett v. Atherton*, 298 Mich. 362, 299 N.W. 108 (1941)); *see also Janson v. Janson*, No. 236676, 2003 WL 21854706, at *2 (Mich. Ct. App. Aug. 7, 2003) (per curiam) (concluding that, in alleging fraud during his divorce case, the "plaintiff should have sought redress for the alleged intrinsic fraud in the underlying case, rather than filing a new action" (footnote omitted)).

Pursuant to *Daoud*, *Triplett*, and *Nederlander*, Dawn's complaint in this Court is improper. Instead, her only avenue for relief is a motion for relief from judgment in the family court. In fact, Dawn recognizes this much, as she has filed at least one such motion in the family court and successfully obtained relief as to the Pruco Policy. A party may not, as Dawn seeks to do, avoid the rule set forth in *Daoud* and *Triplett* simply by adorning intrinsic fraud allegations in the garb of a RICO claim and seeking relief in federal court. Because Dawn's claims—even those alleged as RICO violations—essentially seek relief from the Consent Judgment, federal court is not the proper forum for Dawn's fraud allegations. *Cf. Glasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*, No. 14-11358, 2016 WL 2622352, at *5 (E.D. Mich. May 9, 2016) ("Giasson's only avenue for pursuing its fraud claim is to file a motion for relief from judgment in the original action. That motion, however, would likely be time barred. Regardless, no cause of action lies here under Michigan law.").

Dawn argues that because the Consent Judgment expressly contemplates additional lawsuits, neither *Nederlander* nor MCR 2.612(C)(1) precludes her claims before this Court. This argument lacks merit.[5] "Consent judgments are binding contracts, subject to the ordinary rules of contract interpretation." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 271 F.3d 235, 237 (6th Cir. 2001). A court's primary goal in construing a consent judgment is to effectuate the parties' intent. *Id.* (quoting *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127 n.28, 517 N.W.2d 19, 29 n.28 (1994)). In construing a consent judgment, the court "must look for the intent of the parties in the words used in the instrument." *Mich. Chandelier Co. v. Morse*, 297 Mich. 41, 49, 297 N.W.64, 67 (1941). "Where a settlement agreement between the parties is unambiguous, the Court must enforce the plain meaning of its terms." *Petosky Inv. Grp., LLC v. Bear Creek Twp.*, No. 5:03-CV-14, 2005 WL 1796130, at *7 (W.D. Mich. July 27, 2005) (citing *Hidrofiltros, S.A. de C.V. v. Rexair, Inc.*, 355 F.3d 927, 930 (6th Cir. 2004)). Moreover, the court "is required to read contracts as a whole, giving harmonious effect, if possible, to each word and phrase." *Royal Prop. Grp., LLC v. Prime Ins. Syndicate, Inc.*, 267 Mich. App. 708, 719, 706 N.W.2d 426, 434 (2005) (citing *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 50 n.11 664 N.W.2d 776, 781 n.11 (2003)).

Dawn's interpretation of paragraph 25 as authorizing additional lawsuits in courts other than the family court is unreasonable. The clear import of paragraph 25 is that the family court is the only court authorized to determine whether a party concealed assets during the divorce proceeding. Nothing in paragraph 25—which refers to "the Court" and not "a court" or "any court"—suggests that the parties were free to file entirely new lawsuits in any court, including the family court.

---

[5] Dawn also argues that she is not merely alleging discovery fraud but instead is alleging an intricate scheme by the Reffitt Enterprise to perpetrate mail and wire fraud. Dawn's own allegations show that this argument is specious. She alleges that Kevin perpetrated the fraud through his answers to interrogatories and other court filings. (ECF No. 1 at PageID.22, 28.) If any fraud occurred, it was committed and completed solely in the divorce proceeding. Dawn's allegations about Kevin's actions following the entry of the Consent Judgment are thus irrelevant.

Instead, that paragraph only addresses the remedy that the family court is to apply if it determines that a party concealed or secreted assets during the divorce proceeding.[6] Dawn's interpretation also ignores the broad release set forth in paragraph 20, which covers "any and all actions, suits, debts, claims, demands and obligations whatsoever . . . up to the date of the entry of this Judgment of Divorce." Her interpretation reads this provision out of the Consent Judgment.

Because the Consent Judgment does not authorize additional lawsuits, Dawn's other arguments fail as well; *Nederlander* and MCR 2.612(C) both bar Dawn's claims in this Court. *Wiand v. Wiand*, 205 Mich. App. 360, 522 N.W.2d 132 (1994) (per curiam), which Dawn cites for the proposition that "where a judgment of divorce includes a provision stating that undisclosed assets are subject to further proceedings, then further proceedings are permitted," (ECF No. 22 at PageID.440), is inapposite. The *Wiand* court did not hold that the plaintiff was authorized to file an independent action, as Dawn says. The court held that although the plaintiff's motion pursuant to MCR 2.612(C)(2) in the divorce proceeding was untimely, the plaintiff's complaint in the subsequent, independent action (*Wiand II*) served as a timely 2.612(C) motion in the divorce proceeding (*Wiand I*). *Id.* at 366–67, 522 N.W.2d at 135. In addition, the court noted a provision in a divorce judgment regarding undisclosed assets must be enforced in the trial court via a motion for relief from judgment. *Id.* at 368, 522 N.W.2d at 135. The court of appeals also held that the trial court properly dismissed the plaintiff's subsequent action because "the issue of defendant's fraudulent concealment of assets was thoroughly addressed in *Wiand I*, and remedies were devised in that proceeding." *Id.* at 369, 522 N.W.2d at 136. Finally, *Marshall v. Marshall*, 135 Mich. App. 702, 355 N.W.2d 661 (1984), and *Prose v. Prose*, No. 330886, 2017 WL 3925515 (Mich. Ct. App.

---

[6] As set forth above, Kevin disclosed both the sale of his Peninsula stock and the consideration he received during the divorce proceeding.

14

Sept. 7, 2017), are readily distinguished. In *Marshall*, the divorce judgment expressly provided that the property settlement was not merged in the divorce judgment, thus allowing an independent action. 135 Mich. App. at 712–13, 355 N.W.2d at 666. Here, the property settlement was merged in the Consent Judgment. In *Prose*, the release in the divorce judgment excepted claims "for fraud pertaining to the negotiation and enforcement of this Judgment of Divorce." 2017 WL 3925515, at *4 (internal quotation marks omitted). Dawn and Kevin did not include any such language in the Consent Judgment.

### 2. Dawn's RICO Claims are Barred by Res Judicata and Release

Apart from the rule prohibiting an independent action in the case of intrinsic fraud, Dawn's RICO claims are barred by the doctrine of res judicata and the broad release in the Consent Judgment.

Under Michigan law, the doctrine of res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Washington v. Sinai Hosp. of Greater Detroit*, 478 Mich. 412, 418, 733 N.W.2d 755, 759 (2007) (internal quotation marks omitted). Res judicata applies to consent judgments. *Schwartz v. City of Flint*, 187 Mich. App. 191, 194, 466 N.W.2d 357, 359–60 (1991). All of the requirements of res judicata are present in this case. That is, the parties resolved the divorce proceeding by the Consent Judgment, Dawn and Kevin were parties in both cases, and Dawn could have asserted her fraud claims in the divorce proceeding—"[t]he exercise of due diligence during the course of liberal discovery should [have] expose[d] any intrinsic fraud that may [have] be[en] present in the divorce proceeding." *Nederlander*, 205 Mich. App. at 127, 517 N.W.2d at 770.

Dawn argues that res judicata does not apply because the Consent Judgment expressly reserved the right to bring future actions.[7] This argument lacks merit for the reasons stated above. Moreover, although fraud in general is excepted from the bar of res judicata, this "exception to res judicata pertains only if the fraud is characterized as extrinsic fraud." *Sprague*, 213 Mich. App. at 313, 539 N.W.2d at 313; *see also Hart v. Hart*, No. 302111, 2012 WL 1021327, at *1 (Mich. Ct. App. Mar. 27, 2012) (per curiam) ("Res judicata applies when intrinsic fraud, but not extrinsic fraud, is pleaded."). As discussed above, although Dawn seeks to characterize her claim as one for extrinsic fraud, if any fraud occurred, it was of the intrinsic variety.

Finally, the release in the Consent Judgment applies to Dawn's RICO claims because the basis for those claims arose prior to the date of entry of the Consent Judgment. Dawn's argument that the Consent Judgment expressly recognized that she may bring such claims, and her argument that the fraud which forms the basis of her RICO claims occurred, at least in part, after the entry of the Consent Judgment, lack merit.

### 3. Dawn Lacks RICO Standing

In addition to asserting that Dawn's claims in this case are precluded by state-law doctrines, Defendants also argue that Dawn's RICO claims are deficient for a number of reasons. Although the Court finds it unnecessary to address the deficiencies in the RICO claims, the Court briefly addresses standing.

Pursuant to 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter" may bring a civil action to recover damages, costs,

---

[7]Dawn also argues that Defendants are judicially estopped from arguing that she may not file a new action because during the August 8, 2014, hearing in family court, Kevin's counsel said that Dawn could file a separate action if she thought fraud was, in fact, committed during the divorce case. Dawn also says that the family court judge agreed, but the transcript shows that the family judge only indicated that Dawn could filed a motion *before the family court judge*. Moreover, the family court's reasons for denying the motion had nothing to do with Kevin's counsel's statement. There is no basis for judicial estoppel.

and a reasonable attorney's fee.  The Sixth Circuit has noted that the "business or property" requirement is "a statutory standing issue." *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 n.2 (6th Cir. 2013).  Thus, a plaintiff may invoke RICO only if she has been injured in her business or property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 3285 (1985).

In her complaint, Dawn alleges in conclusory fashion that Defendants' pattern of racketeering "caused substantial damages to Dawn's business and property," (ECF No. 1 at PageID.3), but nothing in the complaint provides factual support for this.  Rather, Dawn states that she "has alleged that Defendants' actions caused her to lose her right to the monetary value of *Kevin's* [Peninsula] stock."  (ECF No. 22 at PageID.446 (italics added).)  Dawn concedes that the Peninsula stock was not her property, and the Consent Judgment never determined that Dawn has a property interest in the stock.  The only injury Dawn alleges is to "her rightful share of the actual and entire marital estate."  (ECF No. 1 at PageID.3.)  But "[i]njury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing." *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am. Inc.*, No. 2:11-CV-00856, 2013 WL 4516007, 2013 WL 4516007, at *3 (W.D. La. Aug. 22, 2013) (quoting *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998)).  Instead, RICO's standing requires "a 'concrete and actual' loss to . . . business or personal property." *Short v. Janssen Pharms., Inc.*, No. 1:14-CV-1025, 2015 WL 2201713, at *4 (W.D. Mich. May 11, 2015) (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994)).

In the divorce context, courts have held that one spouse's expectation of an award of a share of the other spouse's business interest is not property for purposes of RICO standing.  For example, in *Pohlot v. Pohlot*, 664 F. Supp. 112 (S.D.N.Y. 1987), the plaintiff alleged that the defendant husband diverted and concealed assets and attempted to murder the plaintiff in order to avoid paying

the plaintiff maintenance and child support. Noting that the plaintiff failed to allege an injury to property that belonged to her, the court said that the "[p]laintiff's mere expectation of a favorable decree awarding her a share of [the defendant husband's] assets in the state court matrimonial action does not constitute a property interest protected under RICO." *Id.* at 116; *see also DeMauro v. DeMauro*, 115 F.3d 94, 97 (1st Cir. 1997) (holding that the plaintiff failed to allege a RICO injury to the extent her husband concealed assets that belonged to him because any injury to her expectancy was too speculative and her legal claim to an equitable division of the marital property remained intact); *Capasso v. CIGNA Ins. Co.*, 765 F. Supp. 839, 842 (S.D.N.Y. 1991) ("[E]ven assuming evil motivation on the part of the defendants, their conduct is not actionable because until Nancy Capasso had a property interest, they could not have injured it. Nancy Capasso's mere expectation that she might be awarded some share in her husband's property it too speculative to support a RICO claim.") Thus, because Dawn has not alleged an injury to her property, she lacks standing to assert her RICO claims.

**B.    Motion for Sanctions**

Defendants also seek sanctions against Dawn and her counsel for violating Rule 11 of the Federal Rules of Civil Procedure.

Pursuant to Rule 11, an attorney or an unrepresented party who files a pleading or other paper with a court certifies that, among other things:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;

Fed. R. Civ. P. 11(b)(1), (2). Upon finding that Rule 11 has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for

the violation." Fed. R. Civ. P. 11(c)(1).  The determination of an appropriate sanction is a matter committed to the discretion of the district court.  *See Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 376 (6th Cir. 1996).  The range of sanctions includes

> nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4).  However, the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  *Id.*

In the Sixth Circuit, the test for determining whether a party has violated Rule 11 is whether the individual's conduct was reasonable under the circumstances.  *See Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997).  The standard is an objective one.  *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) (noting that "the imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct'" (quoting *United States v. Kouri-Perez*, 187 F.3d 1, 8 (1st Cir. 1999)).  "Thus, an attorney's good faith is not a defense."  *Id.*  The attorney's conduct is to be judged at the time the pleading or paper was signed rather than on the basis of hindsight.  *See INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987).

Defendants argue that sanctions are warranted because Dawn and her counsel violated subsections (b)(1) and (b)(2) by filing this action.  Defendants argue that the filing of the complaint in this Court needlessly increased the cost of litigation because Dawn's efforts to assert her fraud claim based on Kevin's Peninsula stock had already been rejected by two state court judges.  Defendants also argue that Dawn filed this case with the intent to harass Kevin and his family by asserting irrelevant and inflammatory allegations of criminal and abusive misconduct as part of

claims that had no legal merit. Defendants also argue that the complaint violates subsection (b)(2) because Dawn knew that her claims are barred by res judicata and the broad release set forth in the Consent Judgment, and that Michigan law required her to pursue her claims based on intrinsic fraud in the divorce proceeding by way of a motion for relief from judgment in the family court.

Dawn responds that sanctions are inappropriate because her factual allegations are well supported and her claims are legally sufficient, or at least colorable. Dawn further argues that Rule 11 sanctions are inappropriate because Defendants request dismissal at the pleading stage of the case.

Initially, the Court acknowledges that the Sixth Circuit has cautioned that district courts "should be hesitant to determine that a party's complaint is in violation of Rule 11(b) when the suit is dismissed pursuant to Rule 12(b)(6) and there is nothing before the court, save the bare allegations of the complaint." *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003). The *Tahfs* court reasoned that "[a]t the pleading stage in the litigation, ordinarily there is little or no evidence before the court at all, and such facts as are alleged, must be interpreted in favor of the nonmovant." *Id.*; *see Wall v. Mich. Rental*, No. 15-13254, 2016 WL 3418539, at *5 (E.D. Mich. June 22, 2016) (denying Rule 11 sanctions even though the plaintiffs failed to support their RICO claim with sufficient facts because there was no evidence that they filed the case for an improper purpose or made false allegations or unjustified legal arguments); *Prater v. Livingston Ave. Child Care, LLC*, No. 2:14-CV-490, 2015 WL 1439322, at * 9 (S.D. Ohio Mar. 27, 2015) (denying Rule 11 sanctions because the plaintiff's RICO claim was not frivolous simply because it failed to allege predicate acts showing a pattern of racketeering activity with the requisite specificity); *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 23 F. Supp. 2d 173, 194 (S.D.N.Y. 2014) (stating that the defendants' motion for sanctions based on the plaintiffs' twice-dismissed RICO and fraud claims was "best resolved"

at the end of the litigation). In fact, while this Court often grants motions to dismiss, it rarely imposes sanctions based on pleading deficiencies.

The instant case, however, is not ordinary. This dispute has a contentious and lengthy history and evinces a high level of animosity not only between the clients, but also counsel. Moreover, the universe of information available for determining the propriety of sanctions is not limited to Dawn's complaint.

Setting aside the question of whether Dawn filed her complaint for an improper purpose under subsection (b)(1), in this Court's judgment, Dawn's claims violate subsection b(2) because they are contrary to both the facts and the law and are not otherwise supported by a nonfrivolous legal argument. To begin, as noted above, regardless of Dawn's characterizations in her complaint, she alleges intrinsic fraud in the divorce proceeding—Kevin committed discovery fraud by failing to disclose the true value of his Peninsula stock, which caused her to accept a less favorable property division under the Consent Judgment. The Michigan cases discussed above require that, in such instances, the proper remedy is a motion for relief from judgment filed in the court that rendered the judgment—in this case, the family court. Dawn filed such a motion, which the family court denied as untimely. She also filed an independent fraud action in the circuit court, which the circuit court dismissed because Dawn should have been filed a motion for relief from judgment in the family court. Filing a RICO complaint in federal court was not a viable third option, particularly in light of the preclusive effect of the Consent Judgment and the broad release contained therein. Dawn's (or her counsel's) argument that the Consent Judgment authorizes or does not preclude additional lawsuits outside of the family court is based on an unreasonable reading of the Consent Judgment. Moreover, none of the Michigan cases Dawn cited in her opposition to Defendants' motion to

dismiss supported her position.  In short, Dawn's counsel should have known that filing a RICO claim in federal court to skirt the Consent Judgment was legally improper.

Having concluded that Dawn's complaint violated Rule 11(b)(2), the Court concludes that an award of reasonable attorney's fees and costs is an appropriate sanction.  The Court will not grant Defendants' request to impose fees against Dawn, however, in light of Rule 11(c)(5)(A), which precludes courts from imposing monetary sanctions "against a represented party for violating Rule 11(b)(2)."  Accordingly, the Court will order Defendants' counsel to submit appropriate documentation for an award of fees against Dawn's counsel and their firms.  Fed. R. Civ. P. 11(c)(1).

## C.  Miscellaneous Motions

Dawn has filed two additional motions, a motion to file a sur-reply and a motion for leave to submit supplemental authority.  Because Defendants did not raise new issues in their reply, the Court will not grant the motion to file a sur-reply as the motion to dismiss is adequately briefed. Dawn's motion to submit supplemental authority will be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss and dismiss Plaintiff's complaint with prejudice.  The Court will also grant Defendants' motion for Rule 11 sanctions.

An Order consistent with this Opinion will be entered.


Dated:  December 4, 2017                             _____/s/ Gordon J. Quist_____
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE